# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FIRST DISTRICT—OCTOBER TERM, 1899, AND MARCH TERM, 1900.

## Garden City Wire Spring Co. v. August Boecher.

1. MASTER AND SERVANT—*Where Presumptions of Negligence Do Not Arise.*—As between master and servant no presumption of negligence arises on the part of the master from the mere fact that the servant is injured while in the employ of the master.

2. SAME—*Where the Servant is Directed to do Temporary Work Outside of His Employment.*—When a servant, of mature years and ordinary intelligence, is directed to do a temporary work outside of the line of his employment and proceeds to do such work without objection, the negligence of the master can not be predicated upon that state of facts alone.

3. SAME—*Recovery for Defective Appliances.*—A servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: First, that the appliance was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect and had not equal means of knowing the same with the master.

4. APPELLATE COURT PRACTICE—*Points Not Assigned for Error.*— The objection that the jury arrived at their verdict in pursuance of a preliminary agreement that the sum total of the amounts named by each juror should be divided by the number of jurors and that the quotient should be returned as the amount of their verdict, when not mentioned as a ground for a motion for a new trial in the court below or assigned for error, can not be considered by the Appellate Court.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Mr. Justice SHEPARD dissenting. Opinion filed December 4, 1900. Rehearing denied, April 5, 1901.

(96)

John B. Brady and F. J. Canty, attorneys for appellant.

James C. McShane, attorney for appellee.

Mr. Justice Horton delivered the opinion of the court.

This is an appeal from a judgment for $6,708.33, entered in the Circuit Court of Cook County in favor of appellee and against appellant in an action for personal injury.

The original declaration consisted of three counts. Afterward and by leave of court three additional counts were filed. Briefly stated, the charges of negligence in the declaration are (as stated in his brief by counsel for appellee):

1st. Ordering appellee to do work which was outside the line of his employment.

2d. Failing to provide a sufficient number of men to safely do the work in the performance of which appellee was injured.

3d. Providing an unsafe and insecure scaffold used in the performance of said work.

Appellee was in the employ of appellant in the capacity of a blacksmith. Upon the occasion in question he was directed by the foreman in the employ of appellant to assist in raising an iron shaft weighing 400 pounds from the floor into "hangers" projecting down from the ceiling. A scaffold or platform about eighteen feet long and three and a half or four feet high was put in place for the men to stand upon in raising the shaft and putting it in the hangers. Several men were called to assist in thus putting the shaft in place. All the employes except the foreman and the appellee were dismissed by the foreman after the shaft was safely in the hangers. The shaft was then resting in three hangers, one near the middle and one near to each end. The foreman told appellee to go to one end of the shaft and lift it up two inches so that he, the foreman, could adjust the box or bearing in one of the other hangers. (The middle hanger, as we understand from the testimony.) That would require that appellee, standing upon the scaffold with his shoulder under the shaft, should thus lift

about 200 pounds. The hangers were fastened to the ceiling and at the lower end of each was what may be called a hook. Above the hook was a horizontal part of the hanger, the space between the hook and such horizontal part of the hanger being more than the diameter of the shaft. To remove the shaft so that it would not receive the support of the hanger, it must be lifted up and out at the open side. The shaft must have been so lifted out by appellee or it could not have fallen.

The platform or scaffold was constructed by putting wooden "horses" on the floor and placing on them planks upon which the men stood. It is claimed that this scaffold was so negligently constructed that it was unsteady and shook under the feet of appellee when he had lifted the end of the shaft, thus causing him to lift or throw it out at the open side of the hanger and away from its bearings, and that that was the proximate cause of the injury to appellee.

First. Was there any negligence in "ordering appellee to do work which was outside the line of his employment?"

The place where appellee was working as a blacksmith, was on the same floor and forty or fifty feet from the place where he was injured. Appellee testified that he knew that what the foreman requested him to do was not blacksmith work; that he made no objection to doing it and that he had been doing other work which was not blacksmith work. Also that "when the foreman said, come on, blacksmith, and took me to where the scaffold stood, I didn't tell him I didn't want to go. I went right along." Appellee was an experienced blacksmith about fifty-six years of age.

When an employe of mature years and ordinary intelligence is directed to do a temporary work outside of the line of his employment, and proceeds to do such work without any objection whatever, negligence of the employer can not be predicated upon that state of facts alone. Cole v. C. & N. W. Ry. Co.; 71 Wis. 114; Leary v. B. & A. R. R. Co., 139 Mass. 580; 2 Thomp. on Neg., p. 976, Sec. 9; Hogan v. N. P. R. R. Co., 53 Fed. Rep. 519.

Garden City Wire Spring Co. v. Boecher.

We understand the same principles to be recognized and approved by our Supreme Court in Gall v. Beckstein, 173 Ill. 187, where it is said (p. 190):

" The plaintiff's ordinary work in the factory was making sausage casings, but when called upon to unload the salt he voluntarily, without any objection whatever, undertook the performance of that labor, and such labor may therefore be regarded within the scope of his employment."

Counsel for appellee cites as in conflict with this case the following cases: Offut v. Columbian Exposition, 175 Ill. 472; Ill. Steel Co. v. Schymanowski, 162 Ill. 447, and Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573. It will be noticed that in point of time two of these cases are prior and one subsequent to the Gall case. One, and we apprehend a sufficient distinction between these cases and the Gall case is, that in the latter, the party injured made no objection, but went voluntarily to the performance of the service, while in each of the three cases cited the employe informed his superior of the supposed danger and went to the performance of the service by reason of peremptory orders so to do.

In the case at bar, when the foreman said to appellee, " Come on, blacksmith," and took him to where the scaffold stood, and appellee, as he says, made no objection whatever, but " went right along," and if there was any danger, there was none which was not just as apparent to the appellee as it was to the foreman, the labor in which appellee was called to assist will be regarded as being " within the scope of his employment." There is nothing to support the charge that appellee was ordered " to do work which was outside the line of his employment." There was no negligence in this, whether considered by itself or in connection with the other facts and circumstances shown in this record for which appellant can be held to respond in damages.

Second. Was there negligence on the part of appellant in failing to provide a sufficient number of men to safely do the work in the performance of which appellee was injured?

The appellee was a man of experience. He was present and assisted in putting the shaft in place. He knew that the other men who were assisting had been dismissed and were not then present. The absence of other men to assist in lifting the shaft is not alone sufficient ground for a recovery. This is clearly stated in Swift & Co. v. Rutkowski, 167 Ill. 156, where the court says (p. 159):

"We are not aware of any well considered case, where it has been held that the servant who is in the exercise of reasonable care and caution, may recover from the master upon the ground alone that the master has failed to furnish a sufficient supply of help."

But there is no testimony to support the charge that there was not sufficient help. Appellee does not testify that he was not able to readily lift the end of the shaft as directed by the foreman. He says he did lift it, but that it fell because the scaffold shook under his feet. He does not state that he was injured because there was not sufficient help, but says it was because the scaffold shook. The foreman testified that any man of good strength could lift all that appellee had to lift and much more with the advantage he had. Also that he had the hanger to hold onto and the foreman thought he was holding onto it. There is no testimony in conflict with this of the foreman. Nor is there any testimony showing that appellee was injured because of insufficient help. He said, in effect, that this was not the cause of his injury when he testified that when he raised the shaft the scaffold was shaking and threw him out on the side and clear off from the hanger.

As we have seen, there was no negligence, under the circumstances in this case, arising from the fact that appellee was assisting in performing work not ordinarily in the line of his employment. We shall presently see that there was no negligence on the part of appellant in connection with the scaffold. As said by the Supreme Court in the above quotation, appellee can not recover upon the ground alone that appellant failed to furnish a sufficient supply of help. There is no ground upon which appellee can recover outside of the question of want of sufficient help. There.

is then no other sustained charge, with which to couple this charge, even if it were true, so as to justify a recovery.

Third.  Was appellant negligent in providing an unsafe and insecure scaffold used in the performance of said work?

It is not contended that there was any patent defect in the construction of the scaffold or in the material used in its construction.  The foreman testified as follows, viz.:

" I examined that scaffolding very closely before anybody got onto it, and I considered it perfectly safe and sound and didn't find out that it shook in any way, and it held up the shaft and six men all right, and I didn't consider it unsafe."

There is no testimony to the contrary.  The construction of the scaffold is given in detail by the carpenter who built it.  There is nothing to indicate that it was not strong and well constructed.  It was used in the same room for the same purpose both before and after the injury to appellee. In Joliet Steel Company v. Shields, 146 Ill. 603, the Supreme Court said (p. 607) :

" As between master and servant it may be conceded that no presumption of negligence arises on the part of the master from the mere fact that the servant has been injured while in his employ."  Illinois Central Railroad Company v. Houck, 72 Ill. 287; Kuhn v. Railway Company, 70 Iowa, 561; Baltimore Elevator v. Neal, 65 Md. 438; Sack v. Dolese, 137 Ill. 139; East St. Louis Packing Company v. Hightower, 92 Id. 139.

When the shaft was put in place a few minutes before appellee was injured, there were six men upon the scaffold, who, with the shaft, weighed 1,300 pounds.  The foreman testified that he " didn't find out that it shook in any way." At the time the appellee was injured there were only two men upon the scaffold, who, with 200 pounds, part of the shaft, weighed about 500 pounds.

There is, then, the undisputed testimony that the scaffold had previously been safely used for the same purpose—that it was closely examined by the foreman before the six men got onto it and found to be, in his opinion, " perfectly safe and sound,"—and that " it held up the shaft and six men

all right." To us, the testimony seems to be overwhelming that the scaffold was well and properly constructed, of good material.

But even if the scaffold was defective, it does not necessarily follow that there was negligence on the part of appellant. It was the duty of appellant to use reasonable care and diligence in providing a reasonably safe and secure scaffold. But when it is sought to hold appellant liable by reason of an alleged defect or insufficiency in the scaffold, knowledge of some defect or insufficiency must be brought home to the appellant, or proof made that the ignorance of appellant was the result of negligence or want of care (Sack v. Dolese, 137 Ill. 139). There is no proof to establish either of these propositions.

It is also the settled rule of law in this State, as laid down in Wood on the Law of Master and Servant, Sec. 414:

" The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: first, that the appliance was defective; second, that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect, and had not equal means of knowing with the master." Goldie v. Werner, 151 Ill. 551; C. & A. R. R. Co. v. Scanlan, 170 Ill. 111; Howe v. Medaris, 183 Ill. 290.

If it were conceded that the scaffold was defective, the appellee has wholly failed to establish the second and third of such prerequisites necessary to a recovery.

In other words, there is no testimony to show that appellant (or any one representing it) had notice or knowledge of any defect in any of the appliances used, or ought to have had; or that appellee did not know the facts as to such appliances and that he had not equal means of knowing with the appellant and those representing it.

It is, however, argued, that if the direction to do the work outside the line of his employment and the alleged neglect to furnish sufficient help be combined and considered together, or in connection with the condition of the scaffold, they, together, constitute negligence which was the proximate cause of the injury. As we have seen, neither of

Garden City Wire Spring Co. v. Boecher.

these several claims, when considered separately, can be held to sustain the charge of negligence. It would be an anomaly to hold that two or more negatives produce an affirmative; that two or more minus signs produce a plus.

There is but little serious conflict in the testimony in this case upon any material question of fact. The appellee testifies, in substance, that the proximate cause of his injury was that the platform or scaffold shook and threw him off his balance.

The testimony does not show any negligence in the construction or use of the scaffold. When the foreman said "Come on, blacksmith," it was not an imperative order or command in the sense in which an "order," is regarded and considered in the cases cited. And when it is remembered that the appellee, as he testifies, "went right along" without any objection whatever, it can not be properly said that this state of facts, which in themselves show no negligence, thus became a material and necessary factor upon which negligence is predicated, and without which it can not be sustained.

And again, even if it were conceded that there was negligence in directing the appellee to assist in work outside the line of his employment, and also in not furnishing sufficient help, they were not, together, the proximate cause of the injury. That cause, as appellee himself testified, was that, as he says, the scaffold shook under his feet. But there was no negligence in constructing or using the scaffold. To sustain the contention of appellee in this respect we must hold that the facts constituting negligence which was not the proximate cause of the injury, when coupled with facts which show no negligence, together constitute negligence which is the proximate cause. Here we should have the double anomaly that by adding two nothings together we have something, and that by adding that something to another nothing we should have another something entirely different.

When that to which appellee himself swears, was the proximate cause of his injury, and there is no testimony to

establish any other proximate cause, and that proximate cause did not result from negligence on the part of appellant, there can be no recovery.

Counsel for appellant contend that each count of the declaration in this case includes averments as to the unsafe condition of the scaffold, and that no recovery under it can be sustained unless it be found that there was actionable negligence in not providing a proper and safe scaffold. An examination of the declaration shows that such contention has much ground for support. But we prefer to rest our opinion upon the other reasons above assigned.

It is contended by counsel for appellant that appellee, by his own negligence, contributed to the injury. In his brief he says: " The cause of the accident was the bungling manner in which the plaintiff performed his work." Appellee testified that the foreman said, "' When I tell you to raise, raise up that end.' He just told me to raise it up."

As we have seen, if appellant had just raised the shaft up it could not have fallen and he would not have been injured. But whether he was guilty of any negligence which contributed to the injury is a question of fact for the jury, and we are not inclined to here interfere with the verdict upon that ground.

It is argued by counsel for appellant that its demurrer to the additional counts filed by appellee should have been sustained. The ground upon which that contention is based, is that a new cause of action is charged therein, and that such additional counts were not filed within two years after the cause of action arose. Such contention is not well founded. The additional counts do not set up a new cause of action, but contain only a re-statement of the same cause of action set up in the original declaration.

Counsel for appellant insist that the appellee and foreman were fellow-servants in the performance of the particular work in which they were engaged at the time appellee was injured. This contention is not well founded. There is no error in this record upon that question.

It is also urged on behalf of appellant that the judgment

should be reversed because of improper remarks to the jury by the counsel for appellee. Some of the remarks complained of are improper and their use can not be fully justified. But as this case must be remanded for a new trial upon other grounds, we shall rest in the conviction that those remarks will not be repeated, or similar ones indulged in.

It appears that three of the jurors in this case were not summoned for service in the trial court but were brought from the Superior Court. It is alleged by counsel for appellant in their brief that that was error. It is also argued in such brief that the jury arrived at their verdict in pursuance of a preliminary agreement that the sum total of the amounts named by each juror should be divided by the number of jurors and that the quotient should be returned as the amount of the verdict.

Neither one of these points is mentioned in the motion for a new trial or in the assignment of errors. We can not, therefore, consider them.

For the reasons above indicated the judgment of the Circuit Court will be reversed and the cause remanded.

Shepard, Justice : I dissent.